UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELVIN LEBRON,

               Petitioner

    -vs-

DALE ARTUS,

               Respondent.
_____

**DECISION AND ORDER**
**No. 06-CV-0532(VEB)**

## I.    Introduction

Petitioner Elvin Lebron ("Lebron" or "petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a prison disciplinary determination which resulted in a loss of "good time" credits. The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## II.    Background

The Tier III prison disciplinary proceeding at issue occurred on December 8, 2003. At that time, Lebron was incarcerated at Southport Correctional Facility ("Southport"). The charges against Lebron stemmed from his alleged misconduct in connection with his attempts to use the prison library.

On September 9, 2003, Beth Tomic ("Tomic" or "the librarian"), the senior librarian at Southport, wrote a misbehavior report charging Lebron with impersonation (Prison Rule 111.10), solicitation of services (Prison Rule 103.20), correspondence procedure violations (Prison Rule 180.11), and smuggling (Prison Rule 114.10). According to the misbehavior report, Lebron had written to Steele Memorial Library using inmate Darrell Wood's name and

1

identification number, had disguised the envelope by labeling it "Legal Mail," and had enclosed four (4) letters requesting services from that library without prior permission of the prison superintendent. R.87, 140.[1] In these letters, Lebron had requested the addresses and phone numbers of several individuals, as a well as newspaper articles about "alleged suspect Elvin Lebron." *Id.* After Tomic compared the four letters with samples of Lebron's handwriting, she determined that he had sent the letters under the assumed name. *Id.*

Hearing Officer James Esgrow ("H.O. Esgrow" or "the hearing officer") commenced the hearing on December 3, 2003. After being read his rights and obligations, Lebron informed H.O. Esgrow that he had not been served with a copy of the misbehavior report. Noting that the proceedings were actually a re-hearing regarding the September 9th misbehavior report,  H.O. Esgrow adjourned the hearing to determine whether petitioner had been served with a copy of the report. R.123-24.

The hearing resumed on December 5, 2003. R.125. In the course of reviewing Lebron's requests for witnesses and documents, R.125-38, Lebron stated that his hearing assistant had failed to provide him with copies of certain documents which he had requested. Lebron also declared, "I object to my assistance. I've been provided with inadequate assistance." R.137. H.O. Esgrow adjourned the hearing temporarily to look into the issues raised by Lebron. R.139.

When H.O. Esgrow resumed the hearing later that morning, he stated on the record that Lebron had been served with a copy of the misbehavior report on November 26, 2003, and that he had "been provided with adequate, the opportunity for meaningful assistance." R.139. Lebron, after being read the charges, pleaded "not guilty." R.141. He objected to the hearing officer's

---

[1]     Citations to "R.___" refer to the record of the proceedings below submitted by respondent in connection with his answer to the habeas petition.

finding on the adequacy of the assistance he had been provided. R.144.

After dealing with a number of procedural objections raised by Lebron, H.O. Esgrow announced that for "reasons of security," he was not going to have Lebron and any other inmate-witness in the same room together during the hearing. R.152. Lebron objected to this ruling. R.152-53. Lebron then provided H.O. Esgrow with the questions he would like asked of the inmates whom he had called to testify (Wood, Russell, Reddick, and Perry). R.152-60.

Inmate Wood, whom Lebron was alleged to have impersonated, testified first. He stated that he had addressed and mailed the envelope that had been sent to Steele Memorial Library and that the letters therein contained requests for information about Lebron. R.162. Wood testified that he "was helping [Lebron] with his case" and that he wrote the letters for him.  R.162-63. Wood confirmed twice that the information requested was not anything he himself wanted; rather, it was something he was doing for Lebron R.162-63. Wood claimed that Lebron had not written the letters and that the handwriting on the letters was Wood's handwriting. R.164.

Tomic, the librarian who had filed the misbehavior report, testified via telephone. Tomic testified that the Southern Tier Library System had sent her an envelope that had been mailed to the Steele Memorial Library. Tomic explained that when a local library receives a letter from an inmate, the letter is forwarded to the library system, which provides library services to inmates in the region. She stated that when she received the envelope from the Southern Tier Library System, it already had been opened. R.171-72. After reading the contents of the envelope, she recalled that petitioner previously had sent her nearly identical requests. She had many exemplars of Lebron's handwriting from his earlier requests. After comparing them with the letters contained in the envelope, she concluded that the handwriting was the same on all the

materials. She also was able to conclude that the material requested from the Steele Memorial Library  related to petitioner's conviction. R.165-68.

Tomic explained that the proper procedure for an inmate to follow in order to obtain permission to access outside library services is to first write to the prison superintendent's office, which then forwards the letter to Tomic. In this case, Tomic noted, the letter had not been forwarded from the superintendent's office. R.173. Tomic therefore concluded that Lebron had violated the prison's correspondence rules by writing directly to Steele Memorial Library.

Lebron then cross-examined Tomic. Many of his questions were disallowed by the hearing officer as improper or irrelevant. Lebron asked whether Tomic had written the misbehavior report out of animosity towards him as a result of Lebron having filed a number of written complaints about her. Tomic testified that she had no knowledge of the complaints and had written the misbehavior report because it was part of her duties, as an employee, to do so upon discovering a rule violation had occurred. R.178-79.

After Tomic's testimony was completed, the hearing officer adjourned the hearing so that inmates Reddick, Perry, and Russell could be located. R.184.When the hearing resumed, all three witnesses refused to testify. Reddick, an inmate at Southport, stated his refusal on tape. R.184-85. Inmates Perry and Russell were no longer located at the facility, and therefore did not personally appear at the hearing. Instead, they signed forms indicating their refusal to testify which were faxed to the hearing officer. R.185. Lebron objected to the forms, so the hearing officer had the corrections officer who served the forms, Chris Clark ("C.O. Clark") testify by phone. C.O. Clark stated that he had both inmates report to the Tier Hearing Office; both told him that they did not know anything about the incident involving Lebron. R.185-89.

4

After C.O. Clark testified, the hearing officer asked petitioner if he had anything further he wished to put on the record. R.190.  Lebron then made a number of objections; for instance, he alleged that it did not appear to be Perry's signature on the refusal form and protested the hearing officer's decision to have Wood and Tomic testify outside petitioner's presence. R.190-91. Lebron then made a closing argument and also claimed that the hearing officer had conducted an off-the-record investigation because Tomic had documents, such as the misbehavior report, questioning "how did [Tomic] know that she was going to be called as a witness?" R.191-94. The hearing officer stated, "no such investigation or off the record conversation exists" and that it "did not happen." R.194.

Lebron then requested that C.O. Annunziata testify so as to establish that Wood, not petitioner, had placed the envelope in question into the prison mail system. H.O. Esgrow stipulated that Wood had mailed the letter, so Lebron withdrew his request for C.O. Annunziata's testimony. R.197-98. Lebron next asked that the "legal mail processor," who was later identified as mail clerk K. Washburn, testify about "the practice on something that's not deemed legal mail." Lebron requested that records officer V. Grover "testify concerning what is a FOIL request." Lebron requested that Special Housing Unit Director Donald Selsky testify concerning "what is suppose [sic] to be done if no written authorization is obtained to . . . read a prisoner's mail." Finally, Lebron asked that C.O. Curran testify "[a]s a character witness to mitigate the penalties." The hearing officer denied these requests. R.199-200.

As his final point, Lebron indicated that he was "pretty sure that this hearing officer may . . . intend to rely on a previous guilty finding concerning similar charges recently done . . . ." H.O. Esgrow stated that he had not reviewed Lebron's disciplinary record and would not do so

unless and until he determined Lebron was guilty of the charges in the September 9th

misbehavior report. R.200.

The hearing officer then entered his findings of fact and conclusions of law on the record,

determining that Lebron was guilty of the four charges alleged. R.202-03. H.O. Esgrow relied

upon the librarian's misbehavior report, the envelope addressed to Steele Memorial Library and

the letters contained within it, the handwriting samples referred to in the report, the librarian's

testimony concerning her investigation and the prison procedures for inmates to request outside

library services, Lebron's testimony that the handwriting on the letters appeared to be written in

his handwriting, R.154, and Lebron's statement that he gave the letters and envelope to a mail

porter at the prison. R.203. The hearing officer also relied upon Wood's testimony that he had

addressed and mailed the letters to assist Lebron. H.O.  Esgrow further found that someone at the

Steele Memorial Library (the addressee) had opened the letters and forwarded the envelope to

the Southern Tier Library System for further action. Consequently, no further inquiry needed to

be made into petitioner's claim regarding his claim that Tomic exceeded her authority and

opened his mail. R.203. H.O. Esgrow credited Tomic's testimony that she had not filed the

misbehavior report in retaliation, but because she had an obligation to report rule violations.  He

found that  that Lebron had been served with a misbehavior report prior to the hearing and

received an additional copy at the hearing, and that Lebron had been provided an adequate

opportunity for meaningful assistance by a hearing assistant/correction officer whom he had

selected. R.203.

The hearing officer wrote out his disposition and them imposed a penalty of 180 days in

the Special Housing Unit ("SHU"). He further recommended a loss of six (6) months good time

credits. R.202; *see also* R.206-08 (Hearing Officer's Written Disposition).

The Commissioner of the New York State Department of Correctional Services ("NYSDOCS") affirmed the hearing officer's determination. R.32. In January 2004, Lebron commenced a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules in New York State Supreme Court (Chemung County). Lebron's Article 78 proceeding alleged a number of substantive and procedural violations regarding both the December 8th Tier III hearing challenged in the instant habeas proceeding and a separate, unrelated Tier II hearing held in connection with a misbehavior report filed on September 8, 2003. R.2-21. In particular regard to the December 8th hearing, the Article 78 court found that Lebron appeared to be making the following claims: "unuseable evidence due to the failure to obtain a written authorization from the superintendent allowing petitioner's mail to be read; wrongful denial of documents and defense due to an inadequate assistant and the hearing officer's denial of certain documents; wrongful exclusion of witnesses and failure to obtain reasons for the refusal to testify; failure to record all portions of the hearing testimony and that the hearing officer improperly conducted investigations off the record; invalid disposition; biased hearing officer; and excessive sentence." R.233. The court dismissed Lebron's claims on the merits in a decision and order filed February 28, 2005, finding them to be contradicted by the record or without any legal basis. R.232-36. In particular, the Article 78 court found that Lebron had instructed the court to disregard one of his claims (*i.e.*, the allegation of insubstantial evidence) and therefore had waived it. R.233.

Lebron appealed the denial of his Article 78 petition to the Appellate Division, Third Department, of New York State Supreme Court. That court agreed with the Article 78 court's

determinations, and rejected Lebron's appeal as follows:

> Initially, we note that petitioner expressly waived his substantial evidence claim by retracting it before Supreme Court. In any event, the detailed misbehavior report and petitioner's admission that he wrote the requests for library services provide substantial evidence to support the determination of guilt. Next, although the employee assistant was unable to produce every document that petitioner requested, the record reveals that the assistant provided petitioner with all of the relevant information he requested and the Hearing Officer adjourned the hearing to afford petitioner a full opportunity to review the documents to which he was entitled. Finally, petitioner was not improperly denied documents or witnesses inasmuch as the evidence in question was either irrelevant or unavailable. We have reviewed petitioner's remaining contentions and find that they are without merit.

*Lebron v. McGinnis*, 26 A.D.3d 658, 810 N.Y.S.2d 526 (App. Div. 3d Dept. 2006) (citations omitted); *see also* R.254-55.  The New York Court of Appeals denied petitioner's request for leave to appeal. R.259-60.

   This federal habeas petition followed. Respondent answered the petition, interposing the defense of non-exhaustion with regard to many of Lebron's claims. Respondent also addressed the merits of all of Lebron's claims, arguing that they are uniformly without merit. *See* Respondent's Memorandum of Law at 2-3, 10 *et seq.* (Docket No. 19) Lebron filed a Traverse in Reply to Respondent's Memorandum of Law in Response to the Petition ("Trav.") (Docket No. 21), arguing, *inter alia*, that he had fully exhausted his state-court remedies and that he never admitted that he had written the letters in the envelope sent to Steele Memorial Library. Trav. at 1 (Docket No. 21). He conceded that although he had waived his substantial evidence claim, it was not procedurally barred because the Article 78 court nevertheless addressed it on the merits.

   The Court has reviewed the record of the state court proceedings and the law concerning the habeas statute's exhaustion requirement, and it appears that respondent is correct. However, Lebron's claims are easily disposed of the merits. Therefore, in the interest of judicial economy,

the Court will not discuss the exhaustion issue further and will proceed directly to the merits of

Lebron's arguments. *See Boddie v. New York State Div. of Parole*, 285 F. Supp.2d 421, 428

(S.D.N.Y. 2003) ("[I]n habeas corpus cases, potentially complex and difficult issues about the

various obstacles to reaching the merits should not be allowed to obscure the fact that the

underlying claims are totally without merit.") (quotation omitted).

For the reasons that follow, the petition is denied.

### III.    Standard of Review

In determining whether the Appellate Division properly rejected Lebron's arguments,

this Court is constrained by the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA").[2] Under AEDPA, the state court's factual findings are presumed to be correct and

may be overturned only if the petitioner offers clear and convincing evidence of their

incorrectness. 28 U.S.C. § 2254(e). Where the state court has issued an "adjudication on the

merits" of a petitioner's federal claim,[3] the writ may be granted only if the state court's decision

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States"; or was "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(1), (2).

### IV.    General Legal Principles

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that

---

[2]       Pub.L. 104-32, 110 Stat. 1214 (effective April 24, 1996), 28 U.S.C. §§ 2244-66.

[3]       Even though the Appellate Division did not explicitly consider every claim raised by Lebron, its decision nevertheless was an "adjudication on the merits." *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001).

9

prisoners retain a liberty interest and may not be deprived of that interest without due process of law. 418 U.S. at 556. Thus, an inmate facing disciplinary charges that could result in punitive segregation is entitled, at a minimum, to receive advance written notice of the charges against him and of the evidence available to the factfinder. *Id.* at 563-64. The purpose of this notice is to give the inmate an opportunity to marshal the facts and prepare his defense. *Id.* at 564. Due process further requires that a written record of the proceedings be kept, along with a written statement by the factfinder as to the evidence relied upon and reasons for the disciplinary action imposed. *Id.*; *see also Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir.1985). In addition, the inmate is entitled to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566; *see also McCann v. Coughlin*, 698 F.2d 112, 122 (2d Cir. 1983).

The Second Circuit and other circuit courts have elaborated on the minimum due process requirements set forth in *Wolff* that pertain to an inmate facing disciplinary charges. In *Eng v. Coughlin*, 858 F.2d 889 (2d Cir. 1988), for instance, the Second Circuit held that "prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." 858 F.2d at 897. In *McCann v. Coughlin*, the Second Circuit recognized that the factfinder presiding over the disciplinary hearing must be fair and impartial. 698 F.2d at 122 (citing *Crooks v. Warne*, 516 F.2d 837 (2d Cir.1975)).

New York has enacted a comprehensive set of regulations under the heading, "Procedures for Implementing Standards of Inmate Behavior," 7 N.Y. Code R. & Reg. § 250.1-254.9, in order to codify the due process rights afforded to inmates in connection with the

10

prison disciplinary process. Among the procedural rights codified in the regulations which are relevant to the instant case are the right to an assistant to interview witnesses and obtain documentary evidence on behalf of the inmate (7 N.Y. Code R. & Reg. § 251-4); the right to present documentary evidence and to call witnesses at the disciplinary hearing provided that the evidence or testimony is material and would not jeopardize institutional safety or correctional goals (7 N.Y. Code R. & Reg. § 254.5, 254.6); the right to written reasons from the hearing officer should a request for documentary evidence or witnesses be denied (*Id*); and the right to an impartial hearing officer (7 N.Y. Code R. & Reg. § 253.1, 254.1). Generally speaking, New York's regulations more specifically delineate the rights accorded to prisoners and the obligations of prison officials  than do the Supreme Court's and Second Circuit's decisional law. It is well-settled that federal habeas relief not available for mere errors of state statutory, regulatory, or decisional law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

## V.    Merits of the Petition

### A.    Claims Listed on the Amended Petition Form (Docket No. 6-4)

On page 5 of the amended habeas petition form (Docket No. 6-4), there is a list of the "most frequently raised grounds for relief in habeas corpus proceedings."  In the space provided to list "Ground one", Lebron has written, "(f), (g), (i), right to petition, freedom of speech, due process, and equal protection[.]" Subsection (f) on the form denotes a claim based on the failure to disclose favorable evidence; subsection (g) describes a double jeopardy claim; and subsection (I) describes a claim of ineffective assistance of counsel. Lebron did not, either on the amended petition for, in the attachment to the amended petition, or in his Traverse, provide *any* factual

grounds or legal argument regarding the double jeopardy claim, *i.e.*, "(g)"; how his "freedom of speech" was impinged upon; how he was denied his so-called "right to petition"; or how his "equal protection" rights were violated.  The single allegation listed in "Ground one", without any supporting facts, is far too vague to state a colorable claim for habeas relief. Accordingly, the Court dismisses as frivolous Lebron's allegation concerning his "right to petition," "freedom of speech," and "equal protection". And, as respondent correctly argues, the double jeopardy clause of the Fifth Amendment is inapplicable to prison disciplinary proceedings. *E.g.*, *Porter v. Coughlin*, 421 F.3d 141, 142, 147-49 (2d Cir. 2005) (holding that prison disciplinary proceedings are not criminal sanctions for purposes of double jeopardy analysis and that petitioner's "[prison] disciplinary proceeding was civil in nature and therefore presented no violation of the Double Jeopardy Clause"). Lebron does not have a viable claim based on an alleged double jeopardy violation.

With regard to Lebron's allegation concerning "due process," he has set forth numerous alleged violations of his due process rights in more detail in the Attachment to the Amended Petition Form. I shall discuss these claims fully below in this Decision and Order.

With regard to Lebron's allegations of "(f)" (*i.e.*, the failure to disclose exculpatory evidence) and "(i)" (*i.e.*, the denial of effective assistance of counsel), Lebron has not set forth any supporting facts under "Ground one." However, the attachment to the amended petition can be read to allege claims falling under these headings. These shall be discussed in full *infra*.

Next, in the space provided to list "Ground two" on the form habeas petition, Lebron has written, "any grounds existent [sic] in the attached copy of issues which petitioner may have failed to mention due to laymanness [sic]." In addressing the present petition, the Court is

mindful that the plaintiff is proceeding pro se and that his submissions should be held "'to less

stringent standards than formal pleadings drafted by lawyers. . . .'" *Hughes v. Rowe*, 449 U.S. 5,

9 (1980) (*per curiam*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, as

respondent points out, the Court is not required to "scour the entire record for potential

mistakes," Resp't Mem. at 15 (Docket No. 19). This statement by Lebron seeking to raise "any

grounds" that he omitted to mention because of his lack of legal training does not set forth a

viable claim for habeas relief and must be dismissed.

Lebron has not asserted any other claims on the amended petition form.

**B.      Claims Listed in the Attachment to the Amended Petition Form**

**1.      "INADEQUATE DEFENSE/DENIED DOCUMENTS" (Ground A,
pp. 8-9 of Attachment to Amended Petition Form (Docket No. 6-4)**

Lebron claims that his "defense was made inadequate by the Assistant, and Hearing's

[sic] Officer's, denial of" a number of documents which he then lists. Attachment to Amended

Petition Form at 8 (Docket No. 6-4). Lebron's claims regarding the alleged denial of access to

documents will be discussed below in the context of his claims of "INADEQUATE

ASSISTANT" and "WRONGLY EXCLUDED WITNESSES."

He also contends that "[n]o Misbehavior Report was ever provided to petitioner prior to

the Hearing and the one provided by the Hearing Officer petitioner [sic] of knowledge that he

had the right to call witnesses." Attachment to Amended Petition Form at 8-9 (Docket No. 6-4).

When Lebron stated that he had not been provided with a copy, the hearing officer adjourned the

hearing for two days to investigate the matter. When the hearing resumed, the hearing officer

handed Lebron a copy of the misbehavior report. The hearing officer conceded that he did "not

have specifically a document signed by [Lebron] admitting that [he] [was] served with the

13

Misbehavior Report." R.140. However, the hearing officer did have the "Tier Assistance

Selection Form" which "indicate[d] on the [sic] 11/26/03 [Lebron] selected from the assistance

list." R.140. New York State Department of Correctional Services'  regulations entitled Lebron

to an "inmate assistant" to "assist the inmate when a misbehavior report has been issued[.]" 7

N.Y. Code R. & Regs. § 251.4.1.[4] Thus, based on the fact that the Tier Assistance Selection

Form indicated that Lebron had selected an assistant on November 26, 2003, to help him with

the charges stemming from the library incident, the hearing officer found as a fact that Lebron

had been simultaneously served with a copy of the Misbehavior Report by C.O. Qualey. R.139.

This finding of fact is presumed to be correct, and Lebron has not come forward with "clear and

convincing evidence" to rebut that presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Thus, Lebron has not established that he was denied his due process right to advance notice of

the charges against him.

> **2.      "INADEQUATE ASSISTANT" (Ground B, p. 9 of Attachment to
> Amended Petition Form (Docket No. 6-4)**

As noted above, New York's regulations entitle a prisoner to an employee assistant to

help him prepare for a disciplinary hearing. *See*  N.Y. Comp. Codes R. & Regs. tit. 7, §§ 251-

4.1, 251-4.2. The Supreme Court has held that a prisoner's right to assistance as a matter of

federal constitutional law is more limited, determining that the institutional concerns implicated

in prison administration would not be furthered by entitling inmates to legal counsel in the form

of a retained or assigned attorney." *See Wolff*, 418 U.S. at 570 ("The insertion of counsel into the

---

[4]        "The assistant's role is to speak with the inmate charged, to explain the charges to the inmate,
interview witnesses and to report the results of his efforts to the inmate. He may assist the inmate in obtaining
documentary evidence or written statements which may be necessary." 7 N.Y. Code R. & Regs. § 251.4.2.

disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals. There would also be delay and very practical problems in providing counsel in sufficient numbers at the time and place where hearings are to be held. At this stage of the development of these procedures we are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings."); *accord  Silva v. Casey*, 992 F.2d 20, 21 (2d Cir. 1993). The *Wolff* court noted two circumstances where an inmate would be entitled to some assistance in preparing for the hearing, but not the services of retained or appointed counsel:  "Where an illiterate inmate is involved . . . or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Id.*; *accord Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988). The Second Circuit has expanded the disabling circumstances enunciated in *Wolff* to include confinement in a Special Housing Unit ("SHU"),[5] reasoning that in such a situation, an inmate will be unable to exercise his constitutional right to "marshal evidence and present a defense," *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir.1988), *Wolff*, 418 U.S. at 570, without some assistance. Thus,

for inmates disabled by confinement in SHU,[6] or transferred to another facility,

---

[5] At the time of hearing at issue here, Lebron was confined to the SHU as part of his punishment for an earlier disciplinary infraction.

[6] *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 304.1-.14, 305.1-.6 (2003) (listing the "services" and "controls" of the special housing units). The Second Circuit has explained that under the "normal conditions of SHU confinement in New York," the prisoner is:

the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment. Further, the assistance must be provided in good faith and in the best interests of the inmate.

*Eng v. Coughlin*, 858 F.2d at 898 (internal citation omitted); *accord Ayers v. Ryan*, 152 F.3d 77, 80-81 (2d Cir. 1998). However, the Second Circuit cautioned, "[t]he assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." *Silva v. Casey*, 922 F.2d at 22 (citing *Wolff*, 418 U.S. at 570) (declining to hold that inmates have a right to retained or appointed counsel in disciplinary proceedings).

As initial matter, I note that due process does not require that a prisoner be provided with all the documentary evidence he has requested. *See Shephard v. Coughlin*, No. 91 CIV. 8725 (MBM), 1993 WL 77385, at *5 (S.D.N.Y. Mar. 16, 1993) ("When a prisoner is in SHU, an employee assistant should gather evidence, obtain documents and relevant tapes, and interview witnesses. At a minimum, he should perform the investigating tasks which the inmate, were he able, could perform for himself. *Eng*, 858 F.2d at 898.  The law does not, however, require the assistant to obtain all documentary evidence. Plaintiff had no right to a private investigator."). As a matter of federal law, a prisoner's requests to present testimony and other evidence may be denied on the basis of lack of relevance or necessity, provided that the hearing officer provides

---

placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited. *Colon* [v. *Howard*, 215 F.3d 227, 230 (2d Cir. 2000)] (citation omitted); *see also Sealey* [v. *Giltner*, 197 F.3d 578, 581 (2d Cir. 1999)] ("An inmate is confined to his cell 23 hours per day, can take no more than three showers per week, has limited library privileges and no telephone privileges." ); *Frazier* [v. *Coughlin*, 81 F.3d 313, 315 (2d Cir. 1996) (*per curiam*)],(providing a similar description).

*Palmer v. Richards*, 364 F.3d 60, 66 n. 3 (2d Cir. 2004)

the prisoner with reasons for the denials. *See Ponte v. Real*, 471 U.S. 491 (1985); *see also Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994).

Here, Lebron presented twenty-two (22) document requests to his prison employee assistant. R.106. His assistant responded in writing to each request and provided a written explanation when particular materials were not available, were not relevant or appropriate, or would be available from other sources, such as from the library or at the hearing itself. R.107. The assistant was unable to provide all of the documentation requested by petitioner, either because it did not exist, did not pertain to petitioner's hearing, would be available at the hearing, or could be obtained by inmates by other means (*e.g.*, copies of prison directives were available from the law library). R.107. The only documents which existed but were not going to be provided by the inmate assistant to Lebron were the "mail room log (sign in & out)"; "mail room search log"; "mail room activity log"; and "general library sign in and out log." R.106-07. With regard to the mail room documents, the inmate assistant indicated to Lebron that they were "not required" for the hearing. R.107. Lebron has not explained how they were relevant or how the failure to have access to them prejudiced his defense. With respect to the "general library sign in and out log," the assistant noted that it did "not pertain (and already has been Foiled [sic] [*i.e.*, requested by means of a Freedom of Information Law request])." R.107. The assistant added a note that the log was "completely redacted," however. Thus, it would have been of no use to Lebron.

Here, Lebron's employee assistant addressed each of Lebron's document requests in writing. The assistant provided him with many of the documents requested; noted which ones were available from other sources; and provided legitimate reasons for not being able to provide them to Lebron. Lebron received constitutionally adequate assistance from his prison employee

assistant.

**3.    "WRONGLY EXCLUDED WITNESSES" (Ground C, pp. 9-11, Attachment to Amended Petition (Docket No. 6-4).**

A disciplinary procedure that results in a loss of good time credits is not a criminal trial. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 456 (1985), and "the full panoply of rights due a defendant in such proceedings does not apply." *Wolff,* 418 U.S. at 556. The requirements of Due Process in the prison context involve a balancing of inmate rights and institutional security concerns, *Wolff* , 418 U.S. at 560-63. An inmate is constitutionally entitled to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  *Id.* at 566;[7] *see also McCann v. Coughlin*, 698 F.2d at 122. When an inmate is precluded from obtaining certain witness testimony or other evidence, due process requires that the inmate be provided reasons for the denial either at the disciplinary hearing or at a later time. *See Ponte v. Real*, 471 U.S. 491 (1985); *see also Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994) ("*Ponte* holds only that some explanation must be provided either at the time of the disciplinary hearing or subsequently in

---

[7]

Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

*Wolff*, 418 U.S. at 567.

court, and perhaps only *in camera* in the latter instance.") (citing 471 U.S. at 498-99). The Second

Circuit clearly has held that """a prisoner's request for a witness can be denied on the basis of

irrelevance or lack of necessity."""  *Russell*, 35 F.3d at 59 (quoting *Scott*, 962 F.2d at 147)

(quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir.1991)) and citing *Wright v.*

*Smith*, 21 F.3d 496, 499 (2d Cir.1994) (state procedures concerning number of witnesses allowed

in prison disciplinary hearing do not create constitutionally protected liberty interest). Due

process is not violated when the hearing officer decides to take the testimony of a witness outside

the presence of an inmate.  *Kalwasinski v. Morse*, 201 F.3d 103, 108-09 (2d Cir.1999) (citing

*Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir.1989) (citing *Bolden v. Alston*, 810 F.2d 353, 358

(2d Cir.1987)). Furthermore, a prison inmate does not enjoy the Sixth Amendment's right of

confrontation. *Id.* (citing *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir.1993) (citing *Wolff*, 418 U.S. at

567-68).

Lebron first contends that his "requests for prisoners Perry, Reddick, [and] Russell. . . to

testify were never waived so their exclusion required Reasons." Attachment to Amended Petition

at 9, ¶1 (citations omitted) (Docket No. 6-4).  The hearing officer summoned the three inmates to

testify, but they all refused. Reddick was personally questioned by the hearing officer about his

refusal to testify. R.184. Inmates Perry and Russell were not personally interviewed because they

both had been transferred to another facility; rather, they were served with forms, which they

signed so as to verify their unwillingness to testify. Lebron was given an opportunity to review

the forms and when he indicated that he was not satisfied with them, the hearing officer called the

corrections officer, C.O. Clark, who had served the forms, to testify. R.185. C.O. Clark explained

that both Perry and Russell had told him that they "didn't want to get involved" and that he did

nothing to influence their decision. R.188-89. A prison disciplinary hearing officer has no power to force an inmate to testify, and when an inmate refuses, the hearing officer need not call that witness. *Dumpson v. Rourke*, No. CIVA96CV621 (RSP/GJD), 1997 WL 610652, at *5 (S.D.N.Y. Sept. 26, 1997) (citing *Silva v. Casey*, 992 F.2d at 21-22 ("Clearly, if a witness will not testify if called, it cannot be a 'necessity' to call him."); *see also Wolff*, 418 U.S. at 568-69 (recognizing that prison officials have the discretion to decline to call as witnesses fellow inmates who do not wish to testify).

Lebron next contends that his request to call Sr. Legal Mail Clerk K. Washburn to "verify that the mail in question was opened at the facility [*i.e.*, Southport, where Lebron was incarcerated]." Attachment to Amended Petition at 10, ¶2 (Docket No. 6-4). The evidence showed, and the hearing officer found as a fact, that the mail in question was not opened by prison officials, but rather was opened by the addressee (Steele Memorial Library). R.234, 117. The hearing officer, on the Witness Interview Notice, explained this and concluded that the mail clerk's testimony therefore was not relevant.

According to Lebron, he should have been permitted to call "F.O.I.L. Records Access Officer I.R.C. II V. Grover whom [sic] would have verified that mailing a F.O.I.L. Request to a local public library was not a solicitation of services . . . ." Attachment to Petition at 10, ¶4. Again, the hearing officer denied the request to call this witness, finding that the proposed testimony was not material to the hearing issues. R.117. What constitutes a F.O.I.L. request was a question of law for the hearing officer and the opinion of that employee was irrelevant. In any event, the misbehavior report did not characterize the letters in question as F.O.I.L. requests.

Lebron next contends that H.O. Esgrow "erroneously denied petitioner's right to call C.O.

20

Curren [sic] as a character witness for the purpose of mitigating the penalties that were to be

imposed." Attachment to Amended Petition at 10, ¶5 (Docket No. 6-4). The hearing officer

determined that such testimony was "not material to the hearing." R.117; *see also* R.235. Lebron

never alleged, however, that his proposed character witness had any personal knowledge of the

charges at hand, or any issue relevant to the determination of guilt. The hearing officer's

evidentiary ruling therefore was not erroneous as a matter of state or federal law. *See Torres v.*

*Goord*, 67 A.D.2d 732, 733, 700 N.Y.S.2d 280, 281 (App. Div. 3d Dept. 1999) ("[T]he Hearing

Officer did not err in denying petitioner's request to call a character witness with no personal

knowledge of the incidents giving rise to the charge[.]") (citing *Matter of Joyce v. Goord*, 246

A.D.2d 926, 667 N.Y.S.2d 833 (App. Div. 3d Dept. 1998); *Matter of Danaher v. Coombe*, 242

A.D.2d 754, 661 N.Y.S.2d 858 (App. Div. 3d Dept. 1997)); *Simon v. Selsky*, No.

99CIV5747(LAP)JCF, 2002 WL 1205737, at *5 (S.D.N.Y. Mar. 12, 2002) ("It appears that

[habeas petitioner] Simon also wanted to use character witnesses [at his prison disciplinary

hearing] to demonstrate 'the kind of person' he is. Testimony to that effect was properly excluded

because it would have been unnecessary and irrelevant.") (citing *Wolff*, 418 U.S. at 566 ("prison

officials must have the necessary discretion to keep [disciplinary hearings] within reasonable

limits," and may refuse to call witnesses "for irrelevance [or] lack of necessity")); *Graham v.*

*Baughman*, 772 F.2d 441, 445 (8th Cir.1985) (holding that prison disciplinary hearing officials

were "well within their discretion in concluding that such [character] evidence was either

irrelevant or unnecessary").

   Lebron also demanded the right to call "Steele Memorial Library [sic]" to testify as to

whether the envelope was open when it was received; Lebron claimed throughout the hearing that

the librarian, Tomic, had violated prison regulations regarding the opening of inmates' mail. The

hearing officer was well within his discretion in refusing this request, since the expected

testimony was not directly relevant to the issue or Lebron's guilt or non-guilt of the charges

against him. Moreover, there already was evidence supporting the finding that the envelope had

been opened by the addressee (the library), not by Tomic or another prison official, and therefore

any testimony from a representative of the library would have been cumulative.

Lebron wished to call an inmate by the name of Moore "whom [sic] would have verified

that his signature was forged by a different Hearing Officer in a different/Reversed [sic] Hearing

and therefore he had never refused to testify for petitioner." Attachment to Amended Petition at

10, ¶7 (Docket No. 6-4); *see also* R.201.The hearing officer indicated that he would not call

inmate Moore because the present hearing was "not the forum to challenge a prior disciplinary

disposition." R.118. Lebron has not alleged that Moore had any information or knowledge about

the incident which formed the basis of the charges being explored at instant disciplinary hearing.

Therefore, Moore's testimony would have been irrelevant and it was well within the hearing

officer's discretion to deny Lebron's request to call inmate Moore to testify.

The record reveals that Lebron was provided with adequate evidence and witnesses to

present a meaningful defense. The hearing officer's denial of Lebron's request to call certain

witnesses did not violate Lebron's due process rights, as prison officials may deny requested

testimony or documentary evidence where, as here, is irrelevant or unnecessary to the proceeding.

*Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir.1992) (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d

at 30). Furthermore, the hearing officer properly provided legitimate reasons for refusing to call

all of Lebron's requested witnesses; these reasons were provided in writing, on the Witness

Interview Notice, dated December 8, 2003, which was the date of the hearing. *See Ponte*, 471

U.S. at 497. Thus, it appears to this Court that the hearing officer fully complied with New York's

state regulations and the federal constitution's requirements, as articulated by the Supreme Court,

with regard to Lebron's right to call witnesses.

### 4.    "LACK OF ANY EVIDENCE" (Ground D, p. 11-12, Attachment to Amended Petition (Docket No. 6-4)

A prisoner may not properly be deprived of a cognizable liberty interest without due

process of law. *See*, *e.g.*, *Wolff v. McDonnell*, 418 U.S. at 555, 556. In *Superintendent v. Hill*, the

Supreme Court ruled that where the prisoner claims he was denied due process in a prison

disciplinary hearing because he was found guilty on the basis of insufficient evidence, the claim

must be rejected if there was at least "some evidence" to support the decision. 472 U.S. at 455. It

bears noting that the burden on the inmate to show that an adverse disciplinary finding was not

supported by sufficient proof is exceedingly high:

> Ascertaining whether this standard is satisfied does not require examination of the
> entire record, independent assessment of the credibility of witnesses, or weighing
> of the evidence. Instead, the relevant question is whether there is *any evidence* in
> the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis added).

Lebron asserts six (6) evidentiary deficiencies in connection with his hearing. First, he

contends that "[t]here was no evidence to support the Sr. Librarian's claim that the Envelope was

forwarded to her already opened by the Steele Memorial Library for further action." Attachment

to Amended Petition, ¶1 (Docket No. 6-4). Tomic, the librarian, testified that the envelope was

already open when she received it, and that it had first been sent directly to Steele Memorial

Library, without having passed through the Superintendent's office, contrary to established

23

procedure. R.87, 173. Lebron was unable to impeach Tomic at all on this point, which ultimately

was not directly relevant to whether or not Lebron was guilty of the charges at issue.

Lebron next asserts that "[t]he record in the instant case never had a Written

Authorization from the Superintendent to allow the reading of the mail." Attachment to

Amended Petition, ¶2 (Docket No. 6-4). There was no need for an authorization as there is no

indication–apart from Lebron's speculative assertions–that an individual within the prison

system opened the item of mail in question. The librarian's uncontradicted testimony was that it

first was opened by an individual at the Steele Memorial Library. Petitioner's repeated insistence

that his case involves an alleged unauthorized opening of his mail by prison officials is simply

unsupported by any facts in the record.

Third, Lebron faults the librarian for not checking with the Superintendent to see if he

had forwarded to her authorization for Lebron to access outside library services.  Attachment to

Amended Petition, ¶3 (Docket No. 6-4). This is a non-issue. It should be noted that Lebron has

never asserted or come forward with any evidence that he *had* obtained authorization from the

Superintendent to request outside library services.

Fourth, Lebron contends that the "Misbehavior Report did not State what correspondence

procedure petitioner violated, F.O.I.L. Requests are not solicitation of services which require the

consent not [sic] approval of a Superintendent . . . ."  Attachment to Amended Petition, ¶4

(Docket No. 6-4). The misbehavior report cites each prison rule number which Lebron was

alleged to have violated. Lebron admitted at the hearing that the misbehavior report did *not*

characterize the letters sent by him to the Steele Memorial Library as "FOIL requests."

Furthermore, Lebron has set forth no legal authority supporting his argument that a request for

24

documents and information from the Steele Memorial Library did not constitute an unauthorized solicitation of services. Moreover, the cited sections of New York Public Officers Law by Lebron are inapposite.

Fifth, Lebron argues that he "could not have impersonated anybody merely because it was deemed that [he] wrote the F.O.I.L. Requests which Mr. Wood in turn mailed out" because he claims he was permitted under NYSDOCS regulations to assist another prisoner prepare correspondence. Attachment to Amended Petition, ¶5 (Docket No. 6-4). Even if the Court were to accept Lebron's premise for the sake of argument, this was not a situation where Lebron had written a letter on another inmate's behalf, requesting information about *that inmate*. Rather, Lebron wrote the letter using Wood's name and requested information about himself, *not* Wood. Furthermore, Wood's testimony negated any possibility that Lebron had written the letters to assist Wood: Wood testified that he addressed and mailed the envelope, which was labeled "Legal Mail," to help Lebron with "legal work on [Lebron's] case." R.162. Wood also acknowledged that "this [information] wasn't something [he] wanted, this [wa]s something [he was] doing for [petitioner]." R.163. Tomic, the librarian, testified that petitioner previously had asked for the same information requested in the letters at issue and that the requested information pertained to petitioner and his conviction.

Sixth, Lebron contends that "[t]he Sr. Librarian's testimony was not true but the truth was the opposite of her story," and that "her actions were obviously retaliation for petitioner's June 29, 2003, August 12, 2003, August 13, 2003, and August 19, 2003, complaints on her– which were acknowledged and responded to on Grievance SPT-27815-03. . . ." Attachment to Amended Petition, ¶6 (Docket No. 6-4). Here Lebron is merely attacking the credibility of a

witness, which is a matter within the province of the factfinder; a court reviewing claims of sufficiency of the evidence may not revisit or second-guess a factfinder's determinations about witness credibility. *See*, *e.g.*, *United States v. Arena*, 180 F.3d 380, 391 (2d Cir. 1999) (in a challenged to the sufficiency of the evidence, the court is to "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility"); *accord United States v. Parkes*, 497 F.3d 220, 223 n.1 (2d Cir. 2007) Even assuming for the sake of argument that the librarian had knowledge of the other grievances filed against her by petitioner, that, without more, would not give rise to an inference that she harbored a bias against Lebron.

In sum, Lebron has failed to demonstrate that the hearing officer's guilty finding was not based on sufficient evidence. I note that in the context of prison disciplinary proceedings, the Supreme Court has set the constitutional bar rather low with regard to the amount of evidence necessary to support a finding of guilty. *See Hill*, 472 U.S. at 456-57.[8]  After reviewing the entire record, it is apparent that there was more than sufficient evidence of Lebron's guilt as to all of the charges considered at the hearing to satisfy the constitutional standard.

**5.    "BIASED HEARING OFFICER" (Ground E, pp. 12-13 of the Attachment to the Amended Petition (Docket No. 6-4).**

A prison inmate subject to a disciplinary hearing is constitutionally entitled to an impartial hearing officer. *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing, *inter alia*, *Wolff v. McDonnell*, 418 U.S. at 570-71). "[A]n impartial decisionmaker is one who . . . does not

---

[8]    In *Hill*, a prison guard testified that he heard a commotion and, upon investigating, discovered an inmate who apparently had just been assaulted. He then saw three other inmates "fleeing together"; no other inmates were in the area. Although the Supreme Court noted that this evidence "might be characterized as meager," it held that the information constituted "some evidence" and was sufficient to support the finding of guilt against the prison inmate.

prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet

seen." *Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir.1990).  The hearing officer need not

come from outside the prison, however. *Allen*, 100 F.3d at 258 (citing *Vitek v. Jones*, 445 U.S.

480, 496 (1980); *Powell v. Ward*, 542 F.2d 101, 103 (2d Cir. 1976)).  The due process clause's

requirements are "'flexible and variable dependent upon the particular situation being

examined.'" *Allen*, 100 F.3d at 258 (quoting *Hewitt v. Helms*, 459 U.S. 460, 472 (1983),

*modified on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995)). It is important to note that

the impartiality required of prison officials does not rise to the level of that required of judges

generally, and "[i]t is well recognized that prison disciplinary hearing officers are not held to the

same standard of neutrality as adjudicators in other contexts." *Id.* (citing *Russell*, 35 F.3d at 60;

*Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989); *Hill*, 472 U.S. at 455-56 (holding that the

"requirements of due process are satisfied if *some* evidence supports the decision by the prison

disciplinary board to revoke good time credits") (emphasis added)). Rather, as the Supreme

Court explained in *Wolff*, 418 U.S. at 571, due process requires that the hearing officer not be so

insufficiently impartial as to present a "hazard of arbitrary decisionmaking."

　　　Lebron contends that H.O. Esgrow "failed to record all portions of the hearing and

conducted investigations off the record"; "should not have pulled petitioner's Disciplinary

History since such was not relevant"; and "arbitrarily denied answers by the Sr. Librarian to

petitioner's relevant questions that would have produced [sic] petitioner's request for other

beneficial witnesses. . . ." Attachment to Amended Petition at 12-13 (Docket No. 6-4). Lebron

also states that the hearing officer "was partial by his disregard of the above [errors] and by

stating that petitioner's Disciplinary History was relevant for when he found petitioner guilty,

27

[stating that] petitioner was beating around the bush, to cut to the chase . . . ." *Id.* at 13.[9] As respondent argues, the record provides no factual support for Lebron's assertions that the hearing officer failed to record the entire hearing or conducted "investigations" while the hearing was adjourned and not being recorded. Lebron has not pointed to anything related to H.O. Esgrow's handling of the disciplinary hearing that would indicate bias or that H.O. Esgrow prejudged the evidence. Further, I have reviewed the entire transcript of the disciplinary hearing and I find no evidence there of bias on the part of H.O. Esgrow. Lebron's claim of bias boils down to his disagreement with the hearing officer's evidentiary rulings against him, an insufficient basis upon which to rest a claim that the disciplinary hearing was infected with constitutionally impermissible bias on the part of the hearing officer. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal.") (citation omitted). Furthermore, the fact that hearing officer at times addressed Lebron brusquely in an attempt to keep the hearing focused on relevant topics does not, in and of itself, demonstrate bias. *See id.* ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

A review of the hearing transcript as well as the hearing officer's determination fails to

---

[9]     The remainder of Lebron's allegations under this point heading of hearing officer bias actually attack the sufficiency of the evidence against him and, as discussed above, are without merit.

reveal any basis to conclude predisposition or bias. Rather, the transcript demonstrates that

Lebron was permitted to question witnesses on relevant topics, to articulate his defense to the

charges, to present legal argument regarding his objections to evidentiary rulings, and present a

closing argument. *See*, *e.g.*, *Russell v. Ricks*, No. 9:02CV0940(LEK)(DEP), 2006 WL 1555468,

at *15 (N.D.N.Y. May 31, 2006).  To the extent that Lebron challenges the hearing officer's

acquisition of his prior disciplinary record before ruling upon the question of guilt, I note that

H.O. Esgrow stated he would not examine that history unless it became relevant, and in any

event there is no indication that it influenced his finding of guilt. In sum, none of the examples

cited by Lebron of H.O. Esgrow's handling of issues that arose at the hearing, whether

considered alone or in the aggregate, support a finding that H.O. Esgrow was biased against

Lebron or pre-disposed to find him guilty. Accordingly, this claim fails to provide a basis for

habeas relief.

### 6.     EXCESSIVE SENTENCE (Ground F, Attachment to Amended Petition at 14) (Docket No. 6-4)

Lebron contends that "[t]he disciplinary sentence was excessive and violated the

Sentencing Guidelines for Disciplinary Dispositions on Soliciting, Impersonation, Smuggling,

and Correspondence violations (Though no Soliciting, Smuggling, and Correspondence violation

ever took place.)." Attachment to Amended Petition at 14 (Docket No. 6-4). Petitioner has

overlooked the well-settled principle that "the failure to follow a [NYS]DOCS Directive or

prison regulation does not give rise to a federal constitutional claim." *Rivera v. Wohlrab*, 232 F.

Supp.2d 117, 123 (S.D.N.Y. 2002); *accord Claudio v. Herbert*, No. 01-CV-0120, 2005 WL

327106, at *11 (W.D .N.Y. Feb. 10, 2005). As an initial matter, the New York Court of Appeals

has held that "[n]either loss of good-time credits and other special privileges nor placement in a Special Housing Unit extend the period of incarceration originally imposed" and, accordingly, disciplinary sanctions[10] imposed upon incarcerated defendants "do not constitute criminal punishment triggering double jeopardy protections." *People v. Vasquez*, 89 N .Y.2d 521, 533, 655 N.Y.S.2d 870 (N.Y.), *cert. denied sub. nom.*, *Cordero v. Lalor*, 522 U.S. 846 (1997). Furthermore, an inmate has no federal constitutional right to a sentence in accordance with the guidelines promulgated by the Commissioner of NYSDOCS regarding the appropriate sanction following a disciplinary proceeding. *Id.* Indeed, under New York law, "the guidelines [sic] are nothing more than that–they do not bind the Hearing Officer[;]" *People v. Vasquez*, 89 N .Y.2d at 532 n. 6.  Accordingly, such guidelines do not rise to a level of constitutional significance, and the failure to sentence within them does not present a basis for habeas relief. *See*, *e.g.*, *Rivera v. Wohlrab*, 232 F. Supp.2d at 123. "In any event, '[a]t a Tier III hearing, the maximum penalty that may be imposed is keeplock or SHU confinement for a period of time limited only by the

---

[10]      In order to "carry out the 'formidable tasks' of maintaining order and security in correctional facilities and protecting the safety of inmates and employees, the [New York] Legislature has granted the Commissioner of Correctional Services broad discretion in the formulation and implementation of policies relating to security and to the disciplining of inmates[.]" *Arteaga v. State*, 72 N.Y.2d 212, 217 (N.Y. 1988) (quotation omitted); *see also* N.Y. Correction Law §§ 112, 137 (granting legislative authority to the Commissioner of NYSDOCS). "Procedures for Implementing Standards of Inmate Behavior," *see*  N.Y. Code R. & Regs., tit. 7, §§ 250-254, have been adopted by NYSDOCS, and "include rules and regulations pertaining specifically to the filing and content of reports of misbehavior, confinement of inmates, requirements for timely hearings, the designation of authorized Hearing Officers, and procedures for conducting Superintendent's hearings." *Arteaga v. State*, 72 N.Y.2d at 217-18 (internal citations omitted); *see* N.Y. Code R. & Regs., tit. 7, §§  251-1.4, 251-3.1; 251-1.6; 251-5.1; 253.1; 254 *et seq.* Prison officials are directed to follow the general policies on discipline of inmates, which include basic guidelines and directives to the effect that disciplinary action must not be overly severe, must be administered 'in a completely fair, impersonal and impartial manner', be appropriately varied to fit such factors as the particular circumstances involved, the behavior pattern of the inmate and the present atmosphere of the facility, and must be taken only to the extent necessary to regulate an inmate's behavior within acceptable limits and to 'assist in achieving compliance by the entire inmate population with required standards of behavior'. *Arteaga*, 72 N.Y.2d at 218 (internal citations and quotations omitted); *see generally* N.Y. Code R. & Regs., tit. 7, § 250.2. "Because of the problems of maintaining security and discipline within correctional facilities, the discretion delegated to the employees and officers is necessarily comprehensive and calls for the exercise of judgment under widely varying conditions." 72 N.Y.2d at 218-19.

length of the inmate's sentence, as well as a loss of good time credit and privileges.'" *Claudio*, 2005 WL 327106, at *11 (quoting *Jackson v. Johnson*, 15 F. Supp.2d 341, 355 (S.D.N.Y. 1998)). Lebron's claim concerning his sentence does not present a cognizable federal constitutional claim and is dismissed. *Accord*, *e.g.*, *Claudio*, 2005 WL 327106, at *11.

## VI.    Conclusion

For the foregoing reasons, Elvin Lebron's request for a writ of habeas corpus is denied, and the petition is dismissed. Because Lebron has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: January 9, 2008
       Buffalo, New York.